STEEL PROTECTED CONCRETE CO. et al. v. CENTRAL IMPROVE-
MENT & CONTRACTING CO.

(Circuit Court, E. D. Louisiana. June 14, 1907.)

No. 13,374.

1. PATENTS—ANTICIPATION—CORNER BAR FOR CONCRETE CURBING.
   The Wainwright patents, Nos. 428,432, 614,587, and 727,233, all for improvements in the construction of concrete curbing, are void as to the metal corner bar shown therein for protecting the upper and outer corner of the curb, which is mentioned in the first, and shown in the drawings, and forms the subject-matter of the two later patents; the general idea of such a protecting bar having been shown in a patent granted to Coignet in 1869, and none of the Wainwright patents disclosing any patentable improvements thereon.

2. SAME—SUIT FOR INFRINGEMENT—ESTOPPEL.
   Quære, whether a defendant sued for infringement of a patent who asserts the validity of a junior patent which is clearly a copy of complainants' is not estopped to deny the validity of the latter.

In Equity. On final hearing.

D. Walter Brown and Rouse, Grant & Grant, for plaintiffs.

J. R. Beckwith, H. L. Lazarus, H. Michel, and E. Howard McCaleb, Jr., for defendants.

SAUNDERS, District Judge. 1. The bill herein alleges that one of the complainants, the Steel Protected Concrete Company, is the owner, and that the other complainant, the Grasser Contracting Company, is the exclusive licensee of three certain patents, taken out by one H. H. Wainwright, for improvements in concrete curb and gutter work; and that the defendant is infringing said patents. The relief prayed for is an injunction, restraining the defendant from further infringements and a decree ordering an accounting by defendant of profits realized from past infringements and payment to complainants of the sum so found to be due. The defendant denies the validity of

the Wainwright patent and claims to be constructing metal protected curbs under a valid patent issued to one Gustave Soniat du Fossat.

2. The Wainwright patents are as follows:

(1) Patent No. 428,432, issued May 20, 1890. Application filed August 21, 1889.

In this patent Mr. Wainwright asserts that he "has invented a new and useful improvement in street curbs. * * * My invention consists of a curb for pavements, roads, lots, etc., embodying a frame for holding a filling, such as artificial stone, or pavement, etc., and an anchor for said frame; the novel features being hereinafter fully set forth and definitely claimed." The claims allowed in this patent are five in number. The first four describe the particular frame and anchor, and the corner bar shown in the drawings. The fifth claim is general:

"5. In a curb, a frame having a corner bar with a tongue on its inner face, substantially as and for the purpose set forth."

The general object of the entire device described in this patent seems to have been to construct a frame in which a concrete curb could be built in situ, and, as one of the incidents of this construction, it was proposed to place a metal bar on or imbedded in the upper outer edge of the curb so as to protect that edge from being chipped and broken by the impact of wheels backed against the curb. "It will be noticed," the patent sets forth, "that the frame, excepting the outer face of the corner bar, is embedded in the composition or filling; said frame thus preventing disintegration of the filling and materially adding to the strength of the curb. The (corner) bar protects the corner of the curb from contact with the wheels of the vehicles, and the curb is firmly supported and sustained, owing to the anchors. * * * It will be seen that I produce a superior curb, the same possessing strength and durability, rendering good service, and avoiding the heavy stone heretofore in use."

The claimed utility of the device is thus seen to consist: (1) In strengthening the entire structure of a curb made of artificial stone or cement; and (2) in protecting the outer upper edge of such a curb from being chipped and broken. The protection of the upper outer edge of the curb is not the sole nor even the special and prominent utility claimed to be effected by the combination. The patentee seems to have imagined that the principal utility of his invention consisted in the supposed strengthening of the mass of the curb by the frame in which it was formed, or the anchors holding that frame. The function of the corner bar is mentioned only in one sentence, and then inexactly.

That the patentee believed that the chief value of his device was due to the frame and anchors, which he described minutely and carefully, becomes more evident on reference to the claims made in his first application. These claims were also five in number, and all of them were concerned solely with the frame, and the corner bar is mentioned only once, and that brief reference is comprised in eight words. The claims in the first application are as follows:

"1. A frame for a curb consisting of uprights, a bar or rod connecting the same, and pieces at the base of said uprights, substantially as described.

"2. A frame for a curb adapted to be filled, substantially as described, provided with a protecting corner piece as stated.

"3. A frame for a curb, adapted to be filled, substantially as described in combination with a supporting anchor as stated.

"4. A curb, consisting of a frame, an anchor supporting the same, and filling material embedding said frame; the parts being combined and substantially as described.

"5. A frame consisting of uprights, a rod or bar connecting the same, base pieces for said uprights and anchors supporting said frame, in combination with filling for said frame, resting on said base pieces and embedding the uprights, substantially as described.

"Henry H. Wainwright."

It is obvious, I think, both from the claims as first made, and from the claims as allowed in the patent, and from the language of the body of the patent, that Mr. Wainwright's idea was that the frame and anchors described in his patent was the feature which gave it value. The corner bar is only an incident. His chief object was to strengthen the mass of the curb, not to protect its outer upper edge. While this fact does not disentitle him to the benefit of any invention he may have made incidentally and as a minor part of his main purpose, it is a material fact in determining the real meaning and extent of his claims.

The patent gives no verbal description of the corner bar used to protect the upper outer edge of the curb, except that it has a tongue at the back of it to enter certain slots or recesses in the arms of the frame. This does not state or imply that the tongue is continuous from one end of the bar to the other. Nor does the description in the patent indicate whether the corner bar is flat or curved. The drawings show a curved corner bar, with a flat tongue between parallel faces, from the point where it leaves the bar. A cross-section of the bar in the drawings shows that it is a section of a pipe. The entire bar as shown in the drawings might be obtained by splitting a small iron pipe and fastening an iron sheet at the middle point of the segment taken and extending to or beyond the center. The only function which is stated to be subserved by the tongue is that it rests in the slots of the arms of the frame. There is no suggestion that more tongue is required than enough to rest in these slots, nor that the tongue helps in any way to hold the corner bar in place.

(2) Patent No. 614,587, issued Nov. 22, 1898. Application filed January 26, 1898.

On January 26, 1898, Mr. Wainwright filed an application for a patent for "Improvements in the means for protecting projecting edges of concrete work." This application was eventually changed so as to read: "Improvements in the construction of concrete curb and gutter work." The first clause in this application as filed read: "This invention relates to improvements in means for protecting projecting edges of concrete work." This clause was also finally changed so as to read: "This invention relates to improvements in the construction of curbing, guttering and similar concrete work." Under this application, Mr. Wainwright made seven claims, as follows:

"1. The combination in concrete work, of a continuous metal bar for protecting the corner of the work, guides for temporarily supporting said bar during construction of the work, and concrete backing laid against said bar,

whereby amalgamation of the concrete and metal surfaces fixes the bar in place, substantially as described.

"2. The combination in concrete work of a continuous metal bar for protecting the corner of the work adjustable guides for temporarily supporting said bar during construction of the work and concrete backing laid against said bar, whereby amalgamation between the concrete and metal surfaces fixes the bar in place, substantially as described.

"3. The combination in concrete work of a continuous galvanized metal bar for protecting the corner of the work and concrete backing laid against the bar, whereby amalgamation of the cement and concrete surfaces fixes the bar in place, substantially as described.

"4. The combination in concrete work of a continuous galvanized metal bar for protecting the corner of the work, guides for the bar consisting of a support and an adjustable bracket thereon, and concrete backing placed around said guides and against said bar, substantially as and for the purpose described.

"5. The combination in concrete work of a concrete curb and gutter, and a continuous metal bar at the front edge of the gutter and between it and the street paving, substantially as described.

"6. The combination in concrete work of a continuous galvanized metal bar for protecting the corner of the work, temporary guides for said bar consisting of supports, j, and brackets, k, adjustably secured to said supports and recessed to receive said bar, substantially as described.

"7. The combination in curbing and guttering of a continuous galvanized metal bar, E, for protecting the corner of the curb, temporary guides for said bar consisting of supports, j, and brackets, k, adjustably secured to said supports and recessed to receive said bar, E, and continuous metal bars, G, at the front edge of the gutter and between it and the street paving, substantially as described."

All the above claims as made were finally rejected by the Patent Office and tacitly abandoned by Mr. Wainwright, who substituted in lieu thereof the following three claims, which were allowed, after considerable time and discussion, viz.:

"1. The combination in curb and gutter work of a continuous galvanized-metal T-bar at the exposed corner of the work, brackets adapted to support said bar during the progress of the work, and concrete backing laid against the said bar and embedding said brackets, substantially as and for the purpose described.

"2. The combination in curb and gutter work of a continuous metal T-bar at the exposed corner of the work, brackets recessed to receive the rib of said bar and support the bar during the progress of the work, and concrete laid against said bar and embedding said brackets, whereby the union between the set concrete and the bar holds said bar in place, substantially as described.

"3. The combination in curb and gutter work of adjustable recessed brackets, a continuous metal T-bar provided with a rib adapted to fit said brackets, and concrete laid against said bar and embedding said brackets substantially as described."

In his specifications in this patent, Mr. Wainwright says:

"When curbs and similar work are constructed of concrete, it is indispensable that the corners of the curbs, etc., shall be protected from breakages due to the collision of vehicles and other objects therewith, and I have devised a system of protecting such corners by practically continuous bars of iron or steel. This system is not broadly herein claimed, since it is the subject of my earlier patent; but I do claim the improvements thereon, hereinafter particularly described. Said improvements, in general terms, comprise the following principles and mechanical elements: The protection of the corners of the work consists of a bar of galvanized iron or steel of peculiar shape, [hereinafter described]. "A T-bar, the sections of which are laid with closely abutting ends so that the sections together form a continuous bar. Now, I have

discovered that, when a surface of iron or steel is backed with concrete, such an adhesion or union takes place that the iron or steel is held to the concrete with great tenacity, even when the iron or steel is not imbedded in but merely laid firmly against the concrete backing. I have made a highly useful application of this discovery in my present invention, wherein I first set up brackets containing guide ways. These brackets support the protecting bars, while the cement or concrete backing which forms the curb is being laid, shaped, and set. When set, the union between the cement or concrete and the bars has taken place and said bars are held most firmly in position practically as a part of the structure itself. It is to be particularly noticed here that the structure mentioned presents a very different condition from that exising in a bar of iron or steel, as a stay-bolt or tie rod is embedded in a mass of concrete. The present case is merely a superficial contact on only the back and tongue of the protecting bar and embedding the whole bar in the concrete is impossible, since that would defeat the purpose of the structure, which is that the bar should project or show at the front of the work."

He then goes on to claim the use of galvanized iron bars as part of this combination. Now, obviously, no weight can be given to Mr. Wainwright's statement that he had discovered that concrete adheres with great tenacity to an iron or steel surface on which it is laid, since that fact has been observed and known for centuries. Practically the claimed improvement consists, then, simply in this: That Mr. Wainwright devised a very simple frame to hold in place a bar having a tongue and a convex surface while the cement was hardening on the inner surface of the bar. There was no invention in remarking that the upper outer corner of the curb was liable to be chipped and broken by the impact of wheels against it. There was no invention in the general idea that this upper corner might be protected by a metal covering or bar of some kind. The only question, then, is whether there could be an invention in suggesting that the metal protection for the corner should consist in a solid galvanized iron bar having a convex surface on the outside, with a tongue extending into the cement, and held in position by a frame until the cement hardened. The convex surface of the bar had already been suggested for this very purpose in a patent issued to I. L. Landis for a pavement curb on July 8, 1890, and it had also appeared in the drawings in the first patent issued to Mr. Wainwright, and no invention was claimed. The general idea that the protecting bar should have a tongue set into the concrete also appears, though not clearly, in the drawings to Mr. Wainwright's first patent. As neither the idea of a protecting bar, nor the convex surface of that bar, nor the existence of a tongue extending from it diagonally into the mass of the cement were patentable, it seems to me that there was nothing patentable in the protecting bar shown in Mr. Wainwright's patent, No. 614,587, issued November 22, 1898.

The general idea of protecting with metal pieces the edges and corners of blocks of artificial stone dates back to a patent issued on December 21, 1869, to Francois Coignet. Coignet claimed that his invention consisted in:

"Protecting the exposed corners, sides, edges, or angles of artificial stones by means and with the use of metallic shields fastened thereto in the process of manufacturing said stone, substantially in the manner herein set forth."

The drawings accompanying and showing the Coignet patent show that his proposed edge protector consisted of two metal planes at right

angles and held in place by bolts or rods extending diagonally from the corner into the mass of the concrete. Coignet, it is true, proposed to form the artificial stones in which the corner was protected in molds, from which the stones would be taken and carried to the place where they were to be used. Mr. Wainwright, on the other hand, builds up the stones in the very place and position in which they are used, so that they do not require to be moved, but remain where they set and harden. But the present litigation is not concerned with this aspect of the two inventions. The only matter now under consideration is the feature of the two patents which relates to the protection of the edges of artificial stone with a metal shield or guard of some shape. Clearly Coignet was the first to conceive the general idea of this invention. The only difference between his metal protector and that of Wainwright was that Coignet's metal protector was square-edged, and held in place by bolts or rods with expanded ends, and running diagonally from the corner into the concrete, while Wainwright's metal protector was convex, and was held in place by a continuous tongue extending into the concrete in the same direction as the bolts. Mr. Wainwright's first patent in 1890 shows, but does not claim any invention for, the convex surface of the corner metal protector. This feature of the bar was, therefore, not patentable in the second patent, that of 1898. Besides, the Landis patent, No. 431,898, issued July 8, 1890, shows a metallic edge-protecting bar, having a convex surface at the edge. The use of a galvanized iron bar, instead of a plain iron bar, was certainly not patentable. The use of a continuous expanding tongue to hold the metallic edge protector in place while the concrete is hardening, and to help hold it in place after the concrete has set, is shown in a patent issued to R. S. Griffin on April 16, 1872, for holding a corner head of wood on the edge of a body of plaster. In any case it does not seem to me that the substitution of a continuous tongue in place of the bolts and stays shown in Coignet's patent presents patentable novelty.

(3) Patent No. 727,233, issued May 5, 1903. Application filed March 8, 1900.

In this patent Mr. Wainwright claimed invention for the form of the corner bar and tongue. The only difference between the corner bar and tongue described in this patent and the corner bar and tongue described in the patent of 1898 is that the tongue in the 1903 patent is spread out or enlarged at the inner end. I can see no invention in this change of the form of the tongue. The function of the tongue being to help hold the corner bar tight to the curb, it was so obvious that this function would be better performed if the end of the tongue were enlarged that it would occur to any mechanic of the most ordinary capacity and skill to enlarge it. Nor would any mechanic, so enlarging the tongue, dream that he had thereby invented anything worth patenting.

So far as concerns the metal protecting corner bar, all three of the patents taken out by Mr. Wainwright seem to me to be merely slight modifications of Coignet's construction. The only features in the Wainwright construction of the corner bar for which patentability could ever have been claimed—and the claim for them would have

been of very doubtful validity—were the substitution of the convex corner bar for the square edged corner bar and the continuous tongue for the bolts and stays of the Coignet bar.  But these features appeared for many years in Wainwright's patents before he attempted in the 1903 patent to patent them.  It was then too late.  They had become common property.  In Coignet's patent the drawings exhibit the bolts enlarged at the end to hold them more firmly in the concrete. It was inevitable almost to adopt the same construction, when a continuous tongue was substituted for the separate bolts.  The imbedded end of the tongue would be enlarged to make it more difficult to draw the tongue out of the concrete, just as the imbedded end of the bolt had been enlarged for precisely the same purpose.  As regards the corner bar, my conclusion therefore is that none of the patents issued to Mr. Wainwright show invention or novelty, and that they are all void.

This conclusion necessarily results in the rejection of plaintiff's demand.  I was strongly inclined to hold that the defendants were estopped from contesting the validity of the plaintiff's patents by reason of the fact that the defendants set up a patent which is nothing more than a copy, with immaterial variations, of the 1903 Wainwright patent.  This patent of defendants is that issued to Soniat Du Fossat on November 22, 1904, under application filed on November 13, 1903. The Du Fossat patent was applied for more than six months after the issuance of Mr. Wainwright's last patent.  Du Fossat's construction is so obviously copied from the last Wainwright patent that its nullity is beyond question.  But can the defendants deny patentability in the Wainwright patent, when they claim patentability for an illegal imitation of that patent?  I am strongly inclined to hold that they cannot.  I would so hold if there were authority for thus deciding this controversy as between plaintiffs and defendant.  On reflection, however, I have concluded that the evidence does not necessarily implicate the defendant in fraud.  They took advice of reputable patent lawyers as to their rights and seem to have acted in good faith.  Mr. Mioton, who was instrumental in procuring the Du Fossat patent, says he never examined the Wainwright corner bar until he had filed application for the Du Fossat patent.

On the whole, I have concluded that the only judgment I can render is one based on the invalidity of the Wainwright patents.  There must, then, be a decree in favor of defendants, rejecting plaintiff's demands.