## W. H. MARKELL & CO. v. MUTUAL BEN. LIFE INS. CO.

### No. 6861.

Circuit Court of Appeals, Ninth Circuit.

Feb. 6, 1933.

C. C. Hall and E. L. Wilson, both of Portland, Or., for appellant.

Wood, Montague & Matthiessen, of Portland, Or., for appellee.

194

Before MACK, Circuit Judge, and KERRIGAN and ST. SURE, District Judges.

MACK, Circuit Judge.

This is an appeal from a decree dismissing, on the merits, after trial, a bill to reinstate a $10,000 ordinary life policy issued by appellee, September 12, 1917, on the life of W. H. Markell, the deceased, and payable absolutely to appellant. On November 6, 1917, at Markell's request, the premium payments, all of which were made by appellant, were made payable quarterly. On November 7, 1928, appellant by Markell signed a certificate authorizing appellee to charge as an indebtedness against the policy any premiums overdue one month. Pursuant thereto the March, 1929, quarterly premium of $157.93 was so charged. So far as appears from the record, no one other than Markell dealt with appellee in any matters affecting the policy, except that appellee's agent, Sanford, talked with Bigelow, a stockholder and member of appellant's board of directors, at the time the policy was issued. The substance of this talk, however, does not appear to have been asked for or given at the trial. Appellant was organized in 1911 and capitalized at $50,000, with 500 shares of $100 par each. Markell owned 260 shares; Bigelow originally 205, increased to 220 shares some time prior to 1929. Markell, Bigelow, and Putney, Markell's nephew, were always the three directors, with Markell as president and general manager, and Putney as secretary. After Bigelow was elected city commissioner of Portland in 1913, the only attention that he gave to the affairs of the company was as a member of the board of directors.

Appellant's by-laws provided that no contract by any officer should be valid without the previous authorization or subsequent ratification of the board of directors; that regular meetings of the board should be held at stated quarter-annual intervals, and special meetings whenever called by the president; that a majority of the directors should constitute a quorum.

Appellant introduced the records of nine meetings of the board, four of which were held prior to September, 1917, and one after Markell's death; thus there are minutes of only four meetings held between September, 1917, and Markell's death on February 9, 1930. The minutes of these nine meetings are largely confined to a statement of profits and a declaration of dividends and bonuses. The minutes of the meeting of February 28, 1928, show a resolution authorizing Markell to make loans from the Citizens' Bank of Portland, passed, however, at the bank's request. There was testimony that board meetings were held once a year, with one or more meetings interspersed throughout the year; that the minute book showed resolution that Markell was authorized to increase fire insurance; and that with the board's approval he had purchased stock in the Central Market Bank. But from the testimony it is apparent that no clear control or supervision of the business was exercised by the board of directors as such.

Markell was operated on in November, 1928. On October 10, 1929, Markell and Putney purported to sign on behalf of appellant a surrender of the life insurance policy in question. Sanford, the insurance agent, testified that Markell had expressed a wish to surrender the policy for nearly a year before the purported surrender was effected; that knowing of Markell's poor health, he, Sanford, had tried to dissuade him. To some extent, at least, Sanford's testimony is corroborated by appellant's bookkeeper. The testimony tends to show that, under pressure from Markell, Putney, as secretary, very reluctantly signed the surrender of the policy because he did not want to risk the loss of his job. While Markell's health was "very, very poor," he was mentally unaffected.

Appellee issued a check dated October 11, 1929, for $4,021.52, the cash surrender value of the policy, to appellant. This was deposited by Markell in appellant's bank account shortly thereafter.

In the latter part of December, Putney told Bigelow of the surrender of the policy. A financial statement showing that the insurance policy was no longer carried as an asset was exhibited to Bigelow by the bookkeeper early in January.

Markell died on February 9, 1930. Only thereafter did appellant endeavor to have the policy reinstated. Bigelow's explanation of the delay was that he did nothing because he did not wish to jeopardize Markell's life by discussing the matter with him and because he had given his word of honor to Putney, who feared the loss of his job and his prospective inheritance from his uncle, Markell. Bigelow further testified in effect that he could have done nothing in any event because his was only a minority interest.

We have reviewed the evidence at length because the determination of the case depends upon the facts; the applicable legal principles are not in dispute. A District

Court's findings of fact should not be disturbed in the absence of manifest error. It is not necessary for us to consider whether or not the surrender of the policy was within the scope of Markell's authority considered in the light of the powers actually exercised by him over a long period of years. The policy did purport to be surrendered by appellant. It received the cash surrender value. Two of the directors had full knowledge for four months, the other for at least one month, prior to Markell's death. During this time, no step was taken to bring about the return to appellee of the cash surrender value or even to notify it that the surrender was or would be protested. There is no evidence that appellee in any way contrived to bring about the surrender. Bigelow's regard for Markell's health and his desire not to imperil Putney's position and inheritance may be a praiseworthy explanation of his failure to act, but on such considerations he and appellant cannot enlarge the risks assumed by appellee. It is far from clear that had Bigelow brought the matter up at any time in January, Markell, with the aid of Putney's vote, would not have voted him down; indeed, the contrary is highly probable. Bigelow for reasons sufficient to himself chose not to act. He and the corporation consequently were bound by the acts purported to have been done in the corporate name, the benefits of which the corporation retained in Markell's lifetime.

Especially in view of the well-known duty of insurance companies to make full annual reports in most, if not all, states, as of December 31st of each year, it was the corporation's duty to disaffirm and Bigelow's to endeavor to bring about such disaffirmance with the utmost diligence. This was not done.

Decree affirmed.