WILSON & WILLARD MFG. CO. et al. v. BOLE et al.

(Circuit Court of Appeals, Ninth Circuit. November 8, 1915.)

No. 2641.

1. PATENTS ⬤═312—SUIT FOR INFRINGEMENT—BURDEN OF PROOF.

While it is the general rule that one who attacks the validity of a patent issued to another must make out his case by proof beyond a reasonable doubt, such rule does not apply to the question of priority of invention, where at the time the patent in suit was issued defendant had an application pending for the same invention, and the patent was therefore issued inadvertently, instead of being put in interference, as required by Rev. St. § 4904 (Comp. St. 1913, § 9449).

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544-549; Dec. Dig. ⬤═312.]

2. PATENTS ⬤═62—SUIT FOR INFRINGEMENT—PRIORITY OF INVENTION.

Evidence considered, and held to show that defendant, and not complainant, was the original inventor of the device of the patent in suit, for which defendant had an application pending at the time such patent was issued.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. ⬤═62.]

3. PATENTS ⬤═328—PRIORITY OF INVENTION—UNDER-REAMER.

The device of patent No. 1,080,136, for an under-reamer for oil wells, granted to R. E. Bole December 2, 1913, held to have been the invention of Elihu C. Wilson, and not of the patentee.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit in equity by Robert E. Bole and Edward Double against the Wilson & Willard Manufacturing Company and Elihu C. Wilson. Decree for complainants, and defendants appeal. Reversed.

Raymond Ives Blakeslee, of Los Angeles, Cal., for appellants.

Frederick S. Lyon, of Los Angeles, Cal., for appellees.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge. This was a suit for infringement of letters patent and for an accounting. From an interlocutory decree in favor of the plaintiffs, the present appeal is prosecuted.

For a number of years last past the appellant Wilson & Willard Manufacturing Company has been engaged in the manufacture and sale of under-reamers and other machinery used chiefly in oil well construction. Its place of business is Los Angeles, Cal. The appellant Wilson is president and general manager of the company, and for some years prior to 1913 the appellee Bole was either an employé of the company or intimately associated with the company in a business way. During the period in question under-reamers of different types were manufactured and sold at the shops of the appellant company, but the present controversy involves only a single-piece key which serves as a lock

and support for the spring which sustains the bit-carrying rod within the body of the reamer. Inasmuch as the novelty or patentability of the device is not here in question, a more detailed description of the reamer and its parts is not deemed material at this time.

On the 19th day of February, 1911, appellee Bole made application for letters patent on this single-piece key, and the patent now in suit was granted on that application under date of December 2, 1913. On the 18th day of March, 1913, the appellant Wilson made application for letters patent on the same device. The latter application is still pending. It will thus be observed that the Bole patent issued while the Wilson application for a patent on the same device was pending in the Patent Office.

The principal question in the case is the single one: Who was the inventor of the device in question, and therefore entitled to the patent? This, of course, is largely a question of fact. The contention of the different parties may be briefly summarized as follows:

The appellee Bole testified that in the month of September, 1908, he went from Los Angeles to Maricopa to take temporary charge of the shops of the Sunset-Monarch Oil Company at that place; that before he arrived at Maricopa the superintendent of the Monarch Company had sent a man from San Francisco to fill the position; that one Heber, general foreman of the Monarch Company, thereupon agreed to pay the witness the expenses of his trip and give him an order for a reamer and a Bole spear; that before giving the order for the reamer Heber informed the witness that his company had had so much difficulty with the reamers manufactured by the appellant company in the past that they did not desire to use them further; that the witness explained to Heber that this difficulty could be overcome by certain changes, and the witness then made a sketch of the key or device now in controversy, showing how the key could be driven in place from the side of the reamer, and removed by driving a drift under one end of the key, and then driving the key out from the opposite end; that with this change in contemplation Heber gave the order for the reamer; that at the same time and place the witness also explained the device to one Adams, a machinist in the employ of the Monarch Company; that an order for the reamer with these changes outlined was mailed to the appellant company at Los Angeles, or at the residence address of one Willard, a representative of the company; that this letter contained sketches and a full description of the key or device; that the witness returned to Los Angeles in the course of a week or ten days, and thereafter had numerous conversations with the appellant Wilson concerning the new key, but Wilson refused to adopt his suggestions or to use the key; that in the early part of 1911 the appellant company was having trouble with its reamers because of the difficulty of taking them apart, and its sales were falling off; that the witness again asked Wilson why he did not adopt the suggestions contained in his letter from Maricopa, and the matter was taken up and the key in controversy was then manufactured and installed under the direction and supervision of the witness. Bole is corroborated by Adams and Heber as to what transpired at Maricopa, the latter witness testifying by deposition. Each witness

prepared a sketch such as was exhibited to him by Bole at Maricopa. The witness Willard testified that he received the Maricopa letter, and thought it suggested some changes in the reamer, but what the changes were he could not recall. The appellees also offered in evidence a sketch of the single-piece key and a lever or other device for removing the same, bearing date January 27, 1911, and witnessed by two witnesses. Another witness for the appellees testified that some time during the month of February, 1911, he overheard some discussion between Bole and Wilson over the removal of the key, and saw Bole remove it by driving an old file under one end of it.

On the other hand, the appellant Wilson testified that the idea of using the single-piece key occurred to him as far back as 1906 or 1907; that on the 26th day of January, 1911, his company received an order from the Pacific Iron Works of McKittrick for one of their old-style reamers, the manufacture of which had been discontinued some years before on account of the weakness of some of the parts; that he then took up the question of the adoption of a new key, and after making sketches and considering the matter for some time, and discussing the subject with his brother, he called some of the employés of his company together during the first days of February, 1911, to get their opinion as to the best form of key to adopt; that the present form of key was there agreed upon, and was soon thereafter manufactured in the shops of the appellant company under his direction and supervision, and has been in general use ever since. The witness further testified that he had at no time received any information from the appellee Bole concerning the new key, except a suggestion at the February conference as to the manner of removing it. The witness further testified that the mode of removing the key by driving a drift under one end of it was first discovered by one of his employés some time after the key was manufactured and installed. This witness is fully corroborated by those present at the February conference to the extent that the form and nature of the device was there discussed, and that the appellant Wilson then had in his possession sketches of the present key. He was further corroborated by the testimony of two witnesses to the effect that the mode of removing the key was first discovered by one of his employés.

[1] There are many other matters discussed in the testimony, some wholly immaterial, but the foregoing is a fair summary of the principal testimony in the case. On these facts the appellees contend that the burden is upon the appellants to establish their case beyond a reasonable doubt in the face of the patent, and that, the court below having decreed in their favor on conflicting testimony, this court should not interfere. The appellants, on the other hand, controvert this rule of law, and contend that in any event the overwhelming weight of the testimony is in their favor.

The general rule that a person who attacks the validity of a patent issued to another must make out his case by clear and satisfactory proof, or by proof beyond a reasonable doubt, will not be gainsaid. But this rule is founded in reason. It presupposes an adjudication by the Patent Office of every fact essential to the validity of the patent,

and one who attacks that adjudication in a collateral proceeding must establish his claim by clear and satisfactory proof, or, as is often said, by proof beyond a reasonable doubt. But where it appears that there has been no such adjudication by the Patent Office, as where the patent has been issued through inadvertence or mistake, the reason upon which the rule is founded ceases, and the rule ceases with it. Section 4904 of the Revised Statutes (Comp. St. 1913, § 9449) provides that:

"Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be, and shall direct the primary examiner to proceed to determine the question of priority of invention."

Instead of declaring an interference between the Bole and Wilson applications to determine the question of priority of invention, the Patent Office inadvertently issued the Bole patent. It would be illogical in the extreme to now hold that such a patent casts upon Wilson the burden of proving his case beyond a reasonable doubt, whereas, if the same inadvertence had resulted in the issuance of a patent to Wilson, the like burden would fall upon Bole. On the contrary, it has been repeatedly held by the Patent Office and by the Supreme Court of the District of Columbia, in interference cases, that a patent issued through inadvertence or mistake casts no such burden upon the party claiming against it. 30 Cyc. 894, and cases cited. The equity and justice of this rule is apparent and should control here. The fact that the trial court decreed in favor of the appellees on conflicting testimony is entitled to consideration; but if this court is convinced that the decree is erroneous, after giving due weight and consideration to the superior advantages possessed by the trial court, a reversal must follow.

[2] There are many inherent weaknesses in the case made by the appellees. The failure on the part of Bole to perfect his invention or reduce it to actual practice from September, 1908, until February, 1911, has not been satisfactorily explained. The pressure of other business was the only explanation offered, but in view of the simplicity of the device this explanation is far from satisfactory. Indeed, Bole never perfected his invention, or reduced it to practice at all, for the overwhelming weight of the testimony shows that this was done in the shops of the appellant company, by its employés, at its expense, and under the direction and supervision of the appellant Wilson. The fact that Bole permitted the appellants to manufacture and sell the device for a period of nearly 2 years without objection or protest, and did not file his application for a patent until 4½ years after his alleged discovery, and not until after he had difficulties with the appellants over the settlement of an account, likewise tells against him. The sketch of January 27, 1911, is a peculiar and suspicious piece of evidence. It is on a piece of tracing paper of small dimensions, evidently cut from a larger piece. The date, "January 27, 1911," appears twice across the top of the sketch; then appears a sketch of the single-piece key and a lever or other device for its removal. Be-

neath these are the words: "Key remover for new reamer if adopted." At the bottom appear the words: "Robert E. Bole, Inventor, Jan. 27th, 1911." The sketch and above writings are in indelible pencil, while across the center in ink are the words: "Witness—W. H. Fahnestock. E. F. Grigsby."

Bole testified that he fully explained this sketch to Fahnestock and Grigsby at the time they witnessed the same. Fahnestock and Grigsby, on the other hand, testified that they had no recollection whatever of any such explanation, or of seeing the sketch until long after its date, or that they had signed it, although admitting that the signatures were probably genuine. Furthermore, the difficulty of removing the key seems at all times to have been an obstacle in the way of its adoption. It is now conceded on all hands that driving a drift under the end of the key, and then driving the key out from the opposite end, is the simple and expeditious way of accomplishing that result, and if this was a part of Bole's original discovery in 1908, why should he be making sketches of levers for that purpose in 1911? This sketch is important, if genuine, because it would at least show that Bole had knowledge of the invention as early as January 27, 1911, and before the conference of February, 1911; but we are far from convinced that the sketch is genuine, or what it purports to be.

The appellees criticize the testimony relating to the conference of February, 1911, because of certain discrepancies in the testimony of the different witnesses as to how the conference was called, what was said, who was present, when and where the conference was held, etc. These minor discrepancies tend to strengthen rather than weaken the testimony. The witnesses were testifying to what transpired more than four years before the trial, and if they all agreed upon every detail it would afford strong and convincing proof that their testimony was prearranged. But whether it be called a conference or not, and whether it was called or not, the testimony shows beyond controversy that this form of key was discussed by Wilson and some of his associates and employés in the shop or office of the appellant company early in February, 1911, and that Wilson at that time had in his possession sketches of the key. We think the testimony shows with equal certainty that the appellee Bole was present at that conference, and his denial of that fact does not strengthen his testimony in other respects. The testimony of Heber and Adams is not convincing. They are both very friendly to the appellee Bole, the latter admitting that he would go a long way to help him out. And in this connection it is a significant fact that while Heber refused to order a reamer, except on the strength of the changes suggested by Bole, yet the reamer delivered was of standard make without a change of any kind. If there was any explanation by either of the appellants as to why the order was not filled as sent in, or if there was any objection or protest by Heber or his company because of that fact, the record is silent in regard thereto. The testimony of the witness Willard in relation to the Maricopa letter is so uncertain and contradictory that it is of little, if any, value. A further review of the testimony would unduly extend this opinion, but suffice it to say that a careful examina-

tion of the record convinces us that the appellant Wilson was the inventor, reduced the device to practice, and was entitled to a patent.

We might say in this connection that after the issuance of the Bole patent an interference was declared in the Patent Office between it and the Wilson application. A hearing was had on that interference before the Examiner of Interferences. The parties were represented by the same counsel, and substantially the same witnesses were examined. The record in this case shows that there was no controlling differences between the testimony before the Patent Office and before the court below. After a careful review of the testimony, the Examiner of Interferences found that Wilson, and not Bole, was entitled to a patent. An appeal was taken from that decision to the Examiners in Chief, where the testimony was again reviewed, and the decision of the Examiner of Interferences affirmed. An appeal has been taken from the latter decision to the Commissioner of Patents, where the matter is now pending. The first decision was prior to the decision in the court below, but the decision on appeal was of a later date. Had a final decision been reached in the interference proceedings in the Patent Office, that decision would be controlling in a large measure upon the courts. But what, if any, effect should be given to the decisions of the Examiner of Interferences and the Examiners in Chief in the present state of the record, we will not inquire, further than to state that their conclusion upon the facts is in full accord with our own.

In view of the conclusion we have reached on the merits of the case, we will not discuss or consider the admissibility of the Heber deposition.

The decree is reversed, with directions to dismiss the bill.