## UNION TOOL CO. v. WILSON.

(Circuit Court of Appeals, Ninth Circuit. February 24, 1920.)

### No. 3330.

PATENTS ⬤⟳328—For UNDERREAMER VALID AND INFRINGED.

The Wilson patent, No. 1,183,151, for an underreamer, *held* to cover a structure of which the patentee was the original and true inventor; and also *held* not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Suit by William W. Wilson against the Union Tool Company. Decree for complainant, and defendant appeals. Affirmed.

See, also, Wilson & Willard Mfg. Co. v. Bole, 227 Fed. 607, 142 C. C. A. 239; Same v. Union Tool Co., 249 Fed. 729, 161 C. C. A. 639; Union Tool Co. v. Wilson, 249 Fed. 736, 161 C. C. A. 646.

Frederick S. Lyon and Leonard S. Lyon, both of Los Angeles, Cal., for appellant.

G. Benton Wilson and Raymond Ives Blakeslee, both of Los Angeles, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The present appeal is from a decree adjudging one Elihu C. Wilson, assignor of the present appellee (complainant in the court below), to be the original, sole, and true inventor of the underreamer shown and claimed in letters patent No. 1,183,151, granted by the government to the appellee as such assignee on the 16th day of May, 1916, and adjudging the defendant to the suit to have infringed claims 1 and 3 of that patent; judgment for the damages growing out of such infringement, together with costs, being

awarded the complainant, with a reference to a special master to ascertain the respective amounts.

July 31, 1906, a patent numbered 827,595 was awarded to the same inventor, for underreamers, and the later patent was for an improvement upon or departure from the invention disclosed in the patent of July 31, 1906. In the specifications contained in that of May 16, 1916, the patentee says, among other things:

"The invention relates to underreamers, such as are employed in enlarging oil well and other well holes to permit the lowering of the casing in the hole following the drilling operation; and the invention constitutes an improvement upon or departure from the invention disclosed in and patented by letters patent of the United States issued to me July 31, 1906, for underreamers, No. 827,595.

"The present invention relates particularly to the means for holding one end of the spring which is employed in expanding the cutters or bits of the reamer into working position. It has been found in practice that the means disclosed in said letters patent No. 827,595, while operative and performing the functions required of them, are, under certain conditions, open to certain objections which are overcome by the use and substitution therefor of the means set forth and embodying the present invention.

"The present invention has for particular objects the provision of an improved underreamer, and particularly of an improved means of the general nature specified as a feature of underreamers, which will be superior in point of simplicity and inexpensiveness of construction, facility in assembling and disconnection of parts and features, durability or length of life, freedom from liability to get out of order in long continued service, and positiveness in operation, and which will be generally superior in efficiency and serviceability.

"With the above and other objects in view the invention consists in the novel and useful provision, formation, construction, combination, association and relative arrangement of parts, members and features, all as hereinafter described, shown in the drawing and finally pointed out in claims."

The patent proceeds with a description of the various parts of the combination, with reference to annexed figures, including the following description of the improved single key and its functions:

"The underreamer is shown as within the casing 6 and the shoe 7 in Fig. 1, and as projected at its lower end beneath the shoe in Fig. 2, the cutters being held collapsed in Fig. 1, by the shoe and casing, and being in expanded positions in Fig. 2, such expansion being caused by a coil spring 8 within the hollow body 5 and surrounding a rod or mandrel 9, which plays vertically in the hollow body, the spring being confined between a nut or removable stop 10 at the upper end of the spring actuated rod or mandrel 9, and a key 11 detachably accommodated within a transverse slot 12 in the rod 9 adjacent to the lower end thereof. The slot 12 is elongated longitudinally of the rod, so that the key may remain in relatively fixed position during the longitudinal movement of the rod. A transverse slot 13 in the hollow body 5 permits the insertion and withdrawal of the key. The key 11 is provided with tapered end portions 11a, and with a bottom extension or head 11b which fits within the bore of the hollow body 5, being held therein by the tension of the spring 8, and effectually preventing the key from displacement. The transverse slot 13 in the body is of a width, as is the slot 12, properly to snugly accommodate the key 11; and the slot 13 is of sufficient height, lengthwise of the body 5, to permit the key with its head 11b to be inserted and withdrawn from the slots 12 and 13, in accommodation of the extension of head 11b. Wedges are employed for both inserting and prying out the key 11, under the pressure of the spring 8, such wedges being inserted between the tapering end or ends 11a of the key 11. The lower end of the rod 9 has a T-head 9a entering recesses 14 in the inner faces of the cutters A and B, and permitting the cutters to

swing upon the T-head in the collapsing and expanding movements. Above the T-head 9a the rod 9 has bearing surfaces 9b for the inner faces of the cutters or bits, preventing lateral displacement of the bits. The lower end of the body 5 is bifurcated to form spaced prongs 5a and 5b, separated by an open space, within which the T-head 9a plays, and said prongs have at each edge terminal portions provided with synclinal expansion faces 5c, producing a violent wedge action upon the cutters, and upper slightly outwardly inclined expansion and thrust-bearing faces 5d producing final and relatively slight expansion action of the cutters, the cutters being provided with lateral extensions forming shoulders b, which extensions and shoulders coact with these expansion faces 5c and 5d, when the cutters are raised by the spring 8 to expand the cutters, and riding over such expansion surfaces when the cutters are drawn down into collapsed positions. These shoulders b also impart some of the thrust of the cutters to the prongs in underreaming, the remaining portion of the thrust being imparted to thrust bearings c at that portion of the hollow body 5 at which the formation of the prongs 5a and 5b commences. Dovetails 15 are formed at the sides and inner edges of the prongs 5a and 5b, coacting with dovetails 16 upon the sides of the cutters. These dovetails are so arranged as to allow play to the shank 17 in the collapsing and expanding actions of the cutters. It will be understood that T-head 9 lies across the space between the prongs 5a and 5b, in a plane intermediate of and parallel with the planes of the prongs. A retaining bolt 18 spans the space between the prongs adjacent to the lower ends thereof serving to limit the downward movement of the T-head 9a and also to prevent the cutters from falling out beneath the prongs should the spring actuated rod 9 or T-head 9a become broken.

"The parts are assembled from the lower end of the body 5, by first inserting the spring actuated rod 9 with its spring, then hanging the cutters upon the T-head 9a and moving them with the rod 9 upwardly, whereupon the key 11 is wedged through the slot 13 into the slot 12, and the head 11b is seated in the bore of the hollow body 5 which it closely fits. When it is desired to disconnect the parts of the underreamer, a suitable wedge is applied to one or both of the tapered ends 11a of the key 11, raising it up to free the head 11b, whereupon the key may be driven out laterally from the slots 12 and 13."

The patent then sets out the ten claims thereof; the two adjudged by the court below in the present suit to have been infringed by the defendant below, appellant here, being claims 1 and 3, which are as follows:

"(1) An underreamer having a hollow body and a slotted rod mounted to reciprocate in the same and provided with a spring surrounding the rod and acting at one end to cause movement of the rod, such rod being adapted to support and actuate cutters, and the hollow body being provided with a transverse slot; the combination with such rod and spring and cutters and body; of a single-piece device adapted to be seated at its ends in the openings in the body provided by the transverse slot and to traverse the slot in the rod and to constitute a stop for one end of said spring, and means for preventing endwise movement of said single-piece device in both directions when so inserted."

"(3) An underreamer comprising a body having a central bore, a rod mounted in said bore, said body and rod provided with registering slots, a key or gib loosely mounted in said slots and having means at the bottom for anchoring in said body, a spring surrounding said rod and connected thereto at the top thereof, and operatively connected to said key at its lower end, said rod provided with bit engaging means."

It is insisted by counsel for the appellant that the whole controversy in the case is over "the key and the key alone"; that with the exception of the single key, admittedly new, the combination of the present patent "is identical with the 1906 two-piece key Wilson reamers" publicly "sold and used by him in 1907 and 1908"; and that in-

fringement of the present patent could not result from using "what. was then old."

We are unable to perceive any force in the suggestion. Manifestly, the key was but one of the elements of the combination for which the patent in suit was granted—a very important element, it is true, but without the other elements of the combination the key would amount to nothing.

The Wilson patent numbered 827,595, granted July 31, 1906, was by this court, in the case of Union Tool Co. v. Wilson, 249 Fed. 736, 161 C. C. A. 646, held valid and not anticipated, and that claims 9 and 19 thereof were infringed by the holders of the Double patent, numbered 734,833, issued in 1903, under which the present appellant claims; which patent this court held in its decision rendered at the same time in the case of Wilson & Willard Mfg. Co. v. Union Tool Co. et al., 249 Fed. 729, 161 C. C. A. 639, was for a combination of old elements, and therefore limited to the device shown and described therein, and not to be entitled to a broad range of equivalents.

Both the Wilson patent of 1906, numbered 827,595, and that of Double of 1903, numbered 734,833, were very carefully considered and differentiated by this court in the decisions above cited, and it is needless to repeat here what was there said and pointed out. In each of them the key entering into and forming a part of the respective combinations, the purposes and functions of which are specifically set out in the opinions referred to, was a single-piece key. The present case shows that Wilson, subsequent to the issuance of his patent of 1906, and prior to 1908, made a key in two parts, designated in the record the two-piece key, and publicly sold during the period of about two years a number of the Wilson reamers with such two-piece key substituted for the one-piece key theretofore used by him in his combination, but that then finding that the two-piece key was not satisfactory because the slotted T-rod in connection with which it was used was too small and weak, and for the further reason that the two-piece key was itself too weak and would become jammed and difficult to remove, Wilson invented an improved one-piece key and embodied it as one of the elements of the patent upon which the present suit is based. The case further shows that during the time he was making that single-piece key one Bole was either in the employ of the Wilson company or was so associated with it as to acquire knowledge of the new key, whereupon Bole, on February 9, 1911, made application for letters patent on the said single-piece key, pursuant to which application a patent was issued to him December 2, 1913; the Patent Office having overlooked the fact that on March 18, 1913, Wilson had made application on the same key, which application remained pending and undisposed of. Based upon the patent so issued to Bole, he and Double brought suit in the District Court of the United States for the Southern Division of the Southern District of California against Wilson and his associated Wilson & Willard Manufacturing Company for the alleged infringement of the Bole patent, resulting in an interlocutory decree in favor of the complainants, which case was brought here on appeal from that interlocutory decree, and is reported

in 227 Fed. 607, 142 C. C. A. 239, where the decree was reversed with directions to dismiss the bill; this court concluding its opinion in these words:

"We might say in this connection that, after the issuance of the Bole patent, an interference was declared in the Patent Office between it and the Wilson application. A hearing was had on that interference before the Examiner of Interferences. The parties were represented by the same counsel, and substantially the same witnesses were examined. The record in this case shows that there were no controlling differences between the testimony before the Patent Office and before the court below. After a careful review of the testimony, the Examiner of Interferences found that Wilson, and not Bole, was entitled to a patent. An appeal was taken from that decision to the Examiners in Chief, where the testimony was again reviewed, and the decision of the Examiner of Interferences affirmed. An appeal has been taken from the latter decision to the Commissioner of Patents, where the matter is now pending. The first decision was prior to the decision in the court below, but the decision on appeal was of a later date. Had a final decision been reached in the interference proceedings in the Patent Office, that decision would be controlling in a large measure upon the courts. But what, if any, effect should be given to the decisions of the Examiner of Interferences and the Examiners in Chief in the present state of the record, we will not inquire, further than to state that their conclusion upon the facts is in full accord with our own."

The interference resulted in the issuance to Wilson on May 16, 1916, of the patent upon which this suit was brought.

It is suggested in effect on behalf of the appellant that the improved single-piece key of Wilson was in every substantial particular the same as the prior Double one-piece key embodied as one of the elements of his improved reamer; but we think that suggestion is negatived by the fact that the appellant's key did not and could not perform the function of the Wilson improved single-key, namely, the dispensing with the theretofore extra joint in all reamers, and the permitting the removal or assembling of the rod, spring, and cutters in the reamer body by merely removing the key.

The court below was, in our opinion, quite right in holding that the key in the Double underreamer constituted an infringement of the complainant's patent No. 1,183,151.

We see in the record no ground upon which an estoppel against the complainant in the court below could have been properly adjudged, even conceding it not to have been necessary for the defendant to the suit to plead such estoppel, which it did not do.

The decree is affirmed.