**802**

### KOOL VENT METAL AWNING CORP. OF AMERICA

v.

### AMERICAN BEAUTY VENTILATED ALUMINUM AWNING CO.

#### Civ. No. 6839.

United States District Court
N. D. Ohio, W. D.
March 18, 1954.

Harry O. Ernsberger, Toledo, Ohio, William H. Parmelee, Coleman Harrison, Pittsburgh, Pa., Francis W. McCauley, Detroit, Mich., for plaintiff.

Freeman Crampton, Toledo, Ohio, for defendant.

KLOEB, District Judge.

This is a suit for infringement of Letters Patent Re-Issue No. 20,975 granted January 10, 1939, being a re-issue of original Letters Patent No. 2,-098,705, applied for November 25, 1935, and granted November 9, 1937, for a functional invention relating to a metal awning, it being alleged that claims 16, 17 and 18 of the re-issue patent are being infringed, and also for infringement of United States Letters Patent Design No. 154,550, granted July 19, 1949. The functional patent expires in November of this year.

About the year 1944, Meyer Harrison and Samuel B. Korman purchased the re-issue patent from George Alfred Houseman, the patentee, with the right to operate in thirty-eight states of the Union, paying to Mr. Houseman the sum of $95,000 for such rights. Shortly thereafter, about the end of 1944, or the early part of 1945, the Kool Vent Metal Awning Corporation of America was chartered in the State of Pennsylvania, was assigned the interest of Messrs. Harrison and Korman in the patent, and has since operated as a licensing and manufacturing corporation, with nineteen licenses presently issued in the thirty-eight states wherein it has the privilege to operate, and with certain foreign licenses extant in Canada. Australia and some other countries. The corporation also manufactures its products in the State of Texas. Since the close of the war in 1945, the corporation and its licensees have sold approximately $100,000,000 worth of Kool Vent aluminum awnings, the awnings being adapted to windows, porches, patios, doorways, store fronts, etc. The record indicates considerable competition in the field since the organization of the corporation, with but one known

alleged infringer in the person of the defendant.

It is conceded that claims 17 and 18 of the re-issue patent are dependent upon claim 16, and defendant concedes infringement of claims 17 and 18 if they are held valid and if claim 16 be held valid and infringed.

Claim 16 reads as follows:

"16. An awning adapted to be fastened to a wall or the like support, including a curtain comprising a series of spaced overlapping parallel vertical depending plates, angling outwardly from the awning toward the wall at not more than ninety degrees."

The awning of this re-issue patent is of the sheet metal type, being made from an assembly of sheet metal plates supported on a metal frame. The alleged infringing awning is of similar type.

The canopy of the design patent in suit is of the conical, half-round type. The alleged infringing canopy is of similar type. Because the chief concern of the litigants has centered about claim 16 of the functional patent, which encompasses the louvers that extend around the sides of the awning, we shall undertake a determination of the issues thereon first before taking up the issues involved in the design patent.

Defendant American Beauty Ventilated Aluminum Awning Company is a successor to the Thabet Manufacturing Company. Prior to the Fall of 1949, the Thabet Company was engaged in the manufacture of metal tiles for bathrooms, etc., and late in that year began the manufacture of metal awnings. Early in 1950, it was succeeded by the American Beauty Ventilated Aluminum Awning Company, the defendant herein. Mr. Glenn Thomas is President and chief stockholder of both of these companies.

The defendant denies infringement of both patents and, in addition thereto:

1. Questions the validity of both patents for anticipation and on the ground that they represent merely the skill of the calling and not invention over the art;

2. Claims that the re-issue patent is being misused and that, therefore, plaintiff comes with unclean hands; and

3. Claims that plaintiff is estopped to assert infringement of the re-issue patent.

Infringement of the Re-Issue Patent.

■ This patent discloses an awning designed to protect an opening, such as a window, from direct light of the sun, from rain and snow, and at the same time to permit diffused or reflected light to that opening and to permit air to flow freely from underneath the awning. The end curtain construction is the subject of claim 16 in the suit.

The defendant's awning, like the design patent in suit, is adapted to be attached to the wall of a building over the windows or doors thereof, and it is also provided with end curtains which, like those of the patent in suit, are angled outwardly from the awning toward the building or wall of the building. Plaintiff's Exhibit 5 is a sample of the defendant's design, and Plaintiff's Exhibits 10 to 15 are photographs of one of defendant's awnings now in use.

Plaintiff offered a Mr. Edward R. Hughes as an expert engineer to define and point out the functions of the louvers or end curtains and the novelty in the manufacture and placement thereof. (R, pp. 46 to 83, both incls.) Defendant offered no witness other than Mr. Glenn Thomas, President of defendant company, who testified mainly as to the facts surrounding the organization and the work of Thabet and American Beauty companies and their contacts by way of correspondence with plaintiff company late in 1949, and early in 1950. In other words, the testimony of Mr. Thomas was directed only to the denial of infringement and did not touch on the question of validity. (R, pp. 120 to 145, both incls.)

We are of the opinion, from a study of the record of this case, and particu-

larly of the exhibits offered therein, that, assuming the validity of the re-issue patent, claim 16 thereof is infringed, and that the awning of the defendant structurally and functionally meets the requirements of claim 16 and infringes thereon. We are also of the opinion that the defendant infringes claim 17 and claim 18.

### Validity of the Re-Issue Patent.

It is defendant's contention that the patent is invalid because of prior publications and inventions and also because it exhibits merely the skill of the calling and not invention over the art.

Defendant offered no testimony in support of the claimed invalidity of plaintiff's re-issue patent, but did offer its Exhibit E, which is a folio containing eight patents. The first two of these, Bauschard No. 1,926,609, and Lamborn No. 302,916, are relied upon to show anticipation and non-invention, and the remainder of the patents, to-wit, Pancoast No. 547,356, Burnett No. 1,127,858, Gebhardt No. 1,323,978, Bauer No. 1,354,374, Hawley No. 2,117,320, and Matthews No. 21,053, are relied upon to show the state of the prior art. Defendant offered no testimony explanatory of these patents nor for the purpose of comparing any of these patents with claim 16 of the patent in suit. In its brief, it seems to place chief reliance upon Bauschard No. 1,926,609, which is a patent on an awning of the rigid type and which utilizes a solid sheet of metal with vents cut therein for the side curtains. It appears to us that Bauschard is in no sense the equivalent of the re-issue patent and certainly not so in a functional sense.

The seven additional citations all appear to be too remote to the patent in suit to be given serious consideration.

Section 282 of Title 35, which became effective January 1, 1953, reads as follows:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

The above enactment is but a restatement in statutory form of a principle established and followed by the Courts over a period of many years.

In Walker On Patents, Deller's Edition, Volume Two, § 276, at page 1273, we find the following:

"A presumption of validity follows from the issuance of a patent, and the burden is on the person alleging invalidity to establish it. (Radio Corporation v. Radio Engineering Laboratories, 1934, 293 U. S. 1, 7, [55 S.Ct. 928] 79 L.Ed. 163; Morgan v. Daniels, 1894, 153 U.S. 120, 123, [14 S.Ct. 772] 38 L.Ed. 657; Cantrell v. Wallick, 1886, 117 U.S. 689, 695, [6 S.Ct. 970] 29 L.Ed. 1017; Coffin v. Ogden, 1874, 18 Wall. (85 U.S.) 120, 124, 21 L.Ed. 821; Wilson & Willard Mfg. Co. v. Bole, [9 Cir., 1915] 227 F. 607, 609; Schumacher v. Buttonlath Mfg. Co., [9 Cir., 1920] 292 F. 522, 533; Chester N. Weaver, Inc. v. American Chain Co., [9 Cir., 1925] 9 F. 2d 372, 380; Bankers' Utilities Co. v. Pacific National Bank, [9 Cir., 1927] 18 F.2d 16, 18; Stoody [Co.] v. Mills Alloys, [9 Cir., 1933] 67 F. 2d 807, 812; Reinharts, Inc. v. Caterpillar Tractor Co., [9 Cir., 1936] 85 F.2d 628.)

"The presumption can be overcome only by clear and satisfactory proof. (Sodemann Heat & Power Co. v. Kauffman, [8 Cir., 1921] 275 F. 593, 596; Wisconsin Alumni Research Foundation v. George A. Breon & Co., Inc., [8 Cir., 1936] 85 F.2d 166, 167.)"

In the 1953 Cumulative Supplement to Walker On Patents, Deller's Edition, page 1272, we find the following:

"The issuance of a patent by the Patent Office gives rise to a presumption of validity. (Second Circuit: Schick v. Dictograph, 1937, 89 F.2d 643; Fourth Circuit: Murdock v. Murdock, 1949, 176 F. 2d 434; Baker-Cammack [Hosiery Mills] v. Davis, 1950, 181 F.2d

550; Fifth Circuit: Novadel-Agene [Corp.] v. Penn, 1941, 119 F.2d 764; Robertson [Rock Bit. Co.] v. Hughes, 1949, 176 F.2d 783; Sixth Circuit: Electric Vacuum Cleaner v. P. A. Geier, 1941, 118 F.2d 221; Merco Nordstrom [Valve Co.] v. W. M. Acker Corp., 1942, 131 F.2d 277; Seventh Circuit: Simmons [Co.] v. Superior, 1939, 107 F. 2d 536; Murdock v. Vaughan, 1942, 131 F.2d 258; Smith v. Dental Products, 1944, 140 F.2d 140; Customs Undergarment Corp. v. R. H. Macy & Co., [2 Cir., 1944] 140 F. 2d 197; Bank v. Rauland, [7 Cir., 1944] 146 F.2d 19; Lewyt [Corp.] v. Health-Mor, [7 Cir., 1950] 181 F.2d 855; Charles Peckat Mfg. Co. v. Jacobs, [7 Cir., 1949] 178 F.2d 794; Ric-Wil [Co.] v. [E. B.] Kaiser Co., [7 Cir., 1950] 179 F.2d 401; Eighth Circuit; Irvin v. Buick, 1937, 88 F.2d 947; Payne [Furnace & Supply Co.] v. Williams-Wallace [9 Cir.] 1941, 117 F.2d 823; Ninth Circuit: Park-In Theatres v. Rogers, 1942, 130 F.2d 745; Ralph N. Brodie Co. v. Hydraulic, 1945, 151 F.2d 91; Patterson-Ballagh [Corp.] v. Moss, 1953, 201 F.2d 403; Tenth Circuit: Ratigan v. Deckard, 1937, 91 F.2d 722; Harris v. National, 1948, 171 F.2d 85.)

"The presumption of validity may be overcome, (Gilmore v. Smith, 10 Cir., 1938, 98 F.2d 874; Crowell v. Baker, 9 Cir., 1946, 153 F.2d 972), particularly if there is no invention. (Electric Vacuum Cleaner Co. v. P. A. Geier Co., 6 Cir., 1941, 118 F.2d 221; Butex [Gas Co.] v. Southern Steel, 5 Cir., 1941, 123 F.2d 954; Frank Adam Electric Co. v. Colt's, 8 Cir., 1945, 148 F.2d 497;) but strong proof is required to overcome the presumption. (W-R Co. v. Sova, 6 Cir., 1939, 106 F.2d 478; Forestek [Plating & Mfg. Co.] v. Knapp-Monarch, 6 Cir., 1939, 106 F.2d 554; Western States Mach. Co. v. SS. Hepworth Co., 2 Cir., 1945, 147 F.2d 345; Murdock v. Murdock, 4 Cir., 1949, 176 F.2d 434; Insul-Wool [Insulation Corp.] v. Home Insulation, 10 Cir., 1949, 176 F.2d 502.)"

We are of the opinion that the defendant has failed to sustain the burden of proof cast upon it in connection with its charge of invalidity of the re-issue patent.

## Claims that the Re-Issue Patent is Being Misused and That, Therefore, Plaintiff Comes with Unclean Hands.

■ No testimony was offered to support this defense. It is apparent from the record that defendant relies solely upon certain terms of the contract that exists between plaintiff and its licensees to support this defense. Up to the time of trial, it is apparent that defendant expected to show some illegal requirements in the contract between plaintiff and its licensees whereby the licensees were forbidden to deal in any other type of awnings than those licensed by the plaintiff. However, the record indicates that, on November 2, 1949, and before the defendant or its predecessor Thabet was ever known to the plaintiff insofar as any contacts of record were concerned, the plaintiff addressed a communication to all of its licensees (Defendant's Exhibit H), which reads as follows:

"We request that the provisions in our contract which prohibit you from making or selling any other awning or any other product be eliminated and in place of such provisions the following clause be added: Licensee shall not make or sell any other awning or any other product to which the trademark or name Kool Vent shall be attached; and if the corporate or tradename of licensee includes the word Kool Vent, shall not sell any such awning or product under such corporate tradename. * * *."

From a close reading of the contract had between plaintiff and its licensees, we find no existing impropriety or illegal demand made by plaintiff upon its

licensees and we, therefore, disagree with the defense that the patent is being misused and that, therefore, plaintiff comes to this Court with unclean hands.

### Claims That Plaintiff is Estopped to Assert Infringement of the Re-Issue Patent.

On November 22, 1949, plaintiff, through its counsel, addressed a letter to the Thabet Manufacturing Company (Defendant's Exhibit D), in which it accused the defendant of infringing its re-issue patent. On November 25, 1949, Thabet, through its counsel, acknowledged receipt of plaintiff's letter of November 22, and promised a reply in full. On December 8, 1949, Thabet, through its counsel, wrote a lengthy letter to plaintiff's counsel, in which it parried the question of alleged infringement and, on January 13, 1950, plaintiff, through its counsel, reiterated its belief that defendant was infringing plaintiff's patent. On January 30, 1950, defendant, through its counsel, directed a letter to plaintiff's counsel, which concluded as follows:

"However, because both you and your client seem to attach so much significance to the 'overlapping' feature of claim 16, our client will space the vertical side louvers farther apart and plans to increase the spacing by about an inch. This is not because of any agreement either with your charge of infringement or with your statement concerning the 90 degree angle to the plane of the side curtain, but is a further showing of our client's lack of intention to copy your client's awning."

Plaintiff gave defendant no reply to this letter of January 30, 1950, and no further correspondence was had between the parties until February 27, 1952, when plaintiff addressed a letter to the American Beauty Ventilated Aluminum Awning Company in which it charged that company with infringing its design patent No. 154,550, and also called defendant's attention to alleged infringement of its re-issue patent. In this letter, plaintiff threatened action to suppress the alleged infringement and requested defendant to immediately desist therefrom. Defendant replied to this letter on March 14, 1952, and advised plaintiff that it was of the opinion that it was not infringing any existing patents held or owned by plaintiff.

Defendant contends that the result of this correspondence was an agreement whereby plaintiff would not interfere with defendant's continued operation in the manufacture of awnings if it would alter its structures by spacing the vertical side louvers farther apart. Defendant contends that, because of the lapse of time of approximately two years before it again heard from plaintiff after it had made this suggestion in its letter of January 30, 1950, and because of the lapse of approximately two and one-half year's time before suit was brought by plaintiff, defendant was misled and was prejudiced to its detriment and its loss through the non-action of the plaintiff, and that, therefore, the plaintiff is estopped to assert infringement.

As we have previously pointed out, the only witness in the case offered by defendant was Mr. Glenn Thomas, the President first of the Thabet Company and later of the American Beauty Company. Taking his testimony by the four corners, we are not convinced that any move was ever made by the defendant to space its louvers farther apart as it suggested that it would do in its letter of January 30. No exhibits were offered by the defense by way of drawings, blueprints, models, records, or other evidences of a changed policy to substantiate the uncertain testimony of Mr. Thomas on this question. No other witness such as a company engineer, a draftsman or other employee of the defendant company was offered in support of the claimed change in the spacing of the louvers. No physical exhibits were offered in proof of an actual change in the spacing of the louvers. We are of the opinion, from all of the evidence in

the case, that the defendant has failed to establish that any change was ever made as was suggested in its letter of January 30.

The defendant claimed to have relied to its detriment upon the alleged agreement whereby it could continue to operate if it changed the spacing of its louvers. The testimony of Mr. Thomas is vague and uncertain on the question of any expenditures whatever made in reliance upon such an alleged agreement, assuming that there was such an agreement and that defendant had kept the agreement. On page 139 of the record, Mr. Thomas states the following:

> "There has been no change or additional money spent since the December 8, 1949 letter, with the exception of some automatic reels, which amounts to $6,000.00 and which go directly to contribute to the manufacture of the end curtains."

On page 149, he makes the following statements:

> "We spent that $6,000.00 on that louver from that time up to now in tooling.
> "Q. That was expense for reels? A. Well, it was a series of reels and dies, etc.
> "Q. You could use that reel the same way as you were using it at the time that you wrote this letter? A. The reel, yes, but not the dies."

As a result of the above testimony, the Court is left to speculate as to whether any part of the $6,000 alleged to have been spent on the louver was spent because of any reliance upon the offer of the defendant contained in its letter of January 30.

We are of the opinion that the defendant has failed to establish by the necessary proof that a contract or agreement was entered into by the parties or that the defendant, assuming an agreement to have been entered into, did anything to its detriment in reliance upon a supposed agreement. We, therefore, conclude that the defense of estoppel is without merit.

## The Design Patent.

Defendant offered no testimony in support of its assertion that plaintiff's design patent No. 154,550 is invalid. It claims invalidity on the basis of prior art patents contained in Defendant's Exhibit L, which comprises a group of five prior art patents as follows: Morris No. 738,694, Houseman No. 2,098,705, Hoek No. 244,058, Averill No. 369,493, and Houser No. 1,460,098. We have carefully examined each of these patents and we feel that they are so remote as to preclude any thought that they bear semblance to the design patent in suit.

Defendant places some reliance on Eschrich No. 2,577,317. (Defendant's Exhibit A). Here again no effort was made by way of testimony to effect a comparison between Eschrich and the design patent in suit. Upon an examination of the Eschrich patent, which is a mechanical patent on a metal umbrella, we are of the opinion that this patent points to a type of construction and has no regard for appearance. The design patent in suit is for a design of a canopy for a doorway only with no functional intendment. The contours and the eye appeal of the two differ.

In Walker On Patents, Deller's Edition, Volume One, Sec. 143, at page 447, we find the following:

> " 'The same presumption of validity, arising from the grant, applies to design patents, as to others, as well as the presumption arising from public favor; and the burden is strongly upon the defendant, who attacks the validity of a patent.' (Eloesser-Heynemann Co. v. Bayly-Underhill Mfg. Co., D.C., D. Colo.1928, 29 F.2d 305, 308; Jacob Elishewitz & Sons, Inc. v. Bronston Brothers & Co., Inc., 2 Cir., 1930, 40 F.2d 434, 435.)"

We are of the opinion that the defendant has failed to sustain the burden of proof cast upon it in connection with its charge of invalidity of the design patent.

The design patent here in suit contemplates a novel and attractive struc-

ture. The alleged infringing design of the defendant appears to be a copy of plaintiff's design. (Compare Plaintiff's Exhibits 6 and 18). We are, therefore, of the opinion that plaintiff's design patent is valid and is being infringed.

An injunction may issue as prayed for.

Plaintiff may recover damages based upon a reasonable royalty with interest, together with costs against the defendant.

At pre-trial, as well as at trial, it was understood that if the Court found infringement and ruled against the claimed invalidity there would be a separate accounting. (R, p. 158). If the parties cannot agree on what is a reasonable royalty, then, in due course, the Court will designate an auditor to take an accounting.

Plaintiff may prepare findings of fact and conclusions of law, drawn in accordance with this opinion, and lodge them with the Court within fifteen days. Defendant may take exceptions or suggest additions thereto within ten days thereafter.

A decree may enter accordingly.